IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| EUGENIA WINSTON | : | CIVIL ACTION |
| | : | |
| v. | : | No. 14-93 |
| | : | |
| THE BANK OF NOVA SCOTIA | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                                        **March 13, 2017**

      Plaintiff Eugenia Winston brings federal discrimination and state law claims against Defendant The Bank of Nova Scotia arising out of her employment with and subsequent termination from the Bank as a teller. The Bank moves for summary judgment of all claims, asserting some of Winston's claims are procedurally barred, and the remaining claims fail as a matter of law. The Court agrees and will grant the Bank's motion.

**BACKGROUND**[1]

      In November 2008, Winston began working for the Bank, at its St. John branch, as a teller. After a couple of years, in June 2010, Winston was granted a transfer request to the Bank's Tutu branch. While at the Tutu branch, the Bank began noting Winston had issues arriving to work on time. The Bank's Performance Achievement Review of Winston for 2011, while overwhelmingly positive of Winston's performance of her duties, noted that Winston "need[ed]

---

[1] In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. *Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.*, 898 F.2d 946, 949 (3d Cir. 1990). In doing so, however, the Court notes that Winston, in response to the Bank's motion for summary judgment, did not file a counter-statement of facts or otherwise provide *any* supporting materials or evidence to support her factual assertions. *See* Fed. R. Civ. P. 56(e) (permitting the Court to consider facts undisputed or grant summary judgment, if the facts considered and supporting materials warrant it, when "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact"). As such, the following factual background comes largely from the undisputed facts filed in support of the Bank's summary judgment motion which are supported by record evidence.

to work harder on her tardiness and her absenteeism." Statement of Undisputed Facts Supp. Summ. J., Ex. 5, at 2.

During her employment at the Tutu branch, Winston experienced conflict with the head teller, Latoya Callwood. At some point, Winston and Callwood were involved in a verbal altercation, during which Callwood called Winston an "undercover hoe," and Winston told Callwood she "looked like a drag queen." The day after the incident, after a meeting with the Tutu branch manager Edris Prentice, Winston and Callwood apologized to one another.

In late 2011, Winston was transferred to the Bank's Havensight branch. She continued to experience tardiness issues. From November 2, 2011, to January 12, 2012, Winston was tardy twenty-seven times and absent once. On January 13, 2012, Winston was issued formal written documentation of her tardiness and absenteeism, which she signed. She was again issued formal documentation of her tardiness and absenteeism on March 28, 2012. The Bank consistently identified Winston's regular tardiness as her "personal roadblock[]" to achieving "a more positive path in the bank." *Id.*, Ex. 8, at 2-3. As part of her annual review in 2012, the Bank noted that while Winston performed well as a teller, her achievements were "being overshadowed by her multitude of absences and tardies," indicating that she would improve "by simply being at work everyday and on time." *Id.*, Ex. 9.

On August 15, 2012, the Bank placed Winston on a Performance Improvement Plan (PIP) concerning her tardiness and absenteeism. In accordance with the PIP, Winston personally drafted an "action plan," where she recognized that she had an issue with being tardy and that she desired improvement. On January 10, 2013, the Bank formally disciplined Winston for her tardiness, and on February 4, 2013, Plaintiff was issued further written documentation of her tardiness and absences.

Later that year, on April 22, 2013, Winston was transferred to the Bank's Altona branch. On her first day at the Altona branch, the Bank's Human Resources manager, Shirley Hodge-Ryan, the branch manager, Sharon Kendall, and Winston's immediate supervisor, Alison Francis, met with Winston to discuss her past tardiness issues and her need for improvement. On June 20, 2013, Winston was suspended for her continued tardiness, and was given a final warning that if she did not improve in six months, she would be terminated immediately.

In December 2013, Winston requested a severance package from the Bank, which she received. Although she initially accepted the severance package on December 12, 2013, she subsequently rescinded her acceptance on December 19, 2013. The next day, the Bank terminated Winston, finding she had failed to improve her tardiness issues.

On January 10, 2014, Winston filed a Charge of Discrimination with the Equal Employment Opportunity Commission, and on August 12, 2014, the EEOC issued Winston a Notice of Right to Sue. Winston thereafter initiated this action, bringing claims of discriminatory hostile work environment and retaliation under Title VII; wrongful discharge under the Virgin Islands Wrongful Discharge Act; and intentional infliction of emotional distress.

Winston's allegations arise out of several distinct occurrences while she was employed at the Bank. First, Winston asserts that her conflict with Callwood forms part of the basis for her hostile work environment. Winston relies on the instance at the Tutu branch in which Winston and Callwood had a verbal altercation and Callwood called Winston an "undercover hoe." Moreover, at the Havensight branch, Callwood provoked Winston by calling her names and saying derogatory things about her. Winston asserts that she complained about Callwood's harassment, but the Bank did nothing.

Winston also alleges her hostile work environment claim is based on unwanted sexual advances, including being touched inappropriately, by her supervisor, Alison Francis, and/or the head teller, Sherlita Browne,[2] at the Altona branch. Because Winston refused the advances, Winston asserts that she was forced to sign a letter of suspension, that she was threatened, and ultimately terminated. Winston again asserts that, despite her complaints to the Bank, it did nothing to stop the harassment.[3]

During a February 29, 2016, deposition, Winston alleged that she was also subject to unwanted sexual advances from two female tellers, and that one of the tellers physically assaulted her.

**DISCUSSION**

A motion for summary judgment shall be granted "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." *Boykins v. Lucent Techs., Inc.*, 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000) (citing *Sterling Nat'l Mortg. Co. v. Mortg. Corner, Inc.*, 97 F.3d 39, 45 (3d Cir. 1996), *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995), and *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, AFL-CIO*, 982 F.2d 884, 890 (3d Cir. 1992)).

---

[2] As noted below, while Winston's Complaint alleges that Browne touched Winston inappropriately, her deposition testimony states that it was Francis who touched her.

[3] While Winston's Complaint largely tracks the allegations made in her EEOC charge, the charge contains allegations of harassment and bullying while she was employed at the St. John branch that are not included in her Complaint.

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether to grant summary judgment, the court "must view the facts in the light most favorable to the non-moving party, and must make all reasonable inferences in that party's favor." *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

Winston alleges she was retaliated against for complaining about sexual harassment and was subject to a hostile working environment in violation of Title VII of the Civil Rights Act. Under Title VII, it is unlawful for an employer

> to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, . . . or . . . to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

18 U.S.C. § 2000e-2.

"A plaintiff bringing an employment discrimination claim under Title VII must comply with the procedural requirements set forth in 42 U.S.C. § 2000e-5 by filing a timely discrimination charge with the EEOC." *Deprato v. Day Chevrolet*, 427 F. App'x 86, 89 (3d Cir. 2011) (citing 42 U.S.C. § 2000e-5). Typically, the time to file an EEOC charge is 180 days, but if the plaintiff "initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . . such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred." *Id.* § 2000e-5(e)(1). In this case, it is undisputed that Winston had 300 days from the discriminatory occurrences to file a timely charge with the EEOC.

Winston alleges discriminatory acts beginning in 2010, while working at the Tutu branch, through December 2013, when she was terminated, but failed to file a Charge of Discrimination with the EEOC until January 10, 2014. Thus, any alleged acts of discrimination that occurred prior to March 16, 2013—300 days before Winston filed her EEOC charge—cannot form the basis of Winston's Title VII claims unless an equitable exception to the timely filing requirement applies. *See Cowell v. Palmer Tp.*, 263 F.3d 286, 292 (3d Cir. 2001).

Although Winston fails to argue any exception to the timely filing requirement applies, the Court notes that the continuing violation doctrine is inapplicable here. Under the doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would have otherwise be time barred." *Id.* (quoting *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991)). The Third Circuit has outlined three factors courts should consider when determining if the exception applies: "(1) subject matter—whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency—whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence—whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate." *Id.* (citing *West v. Phila. Elec. Co*, 45 F.3d 744, 755 n.9 (3d Cir. 1995).

Here, Winston alleges actions by different individuals, occurring at distinct branch locations, involving separate factual scenarios occurring over the course of several years. Because Winston does not argue the existence of—and indeed cannot establish—a continuing

violation, the Court finds that any discriminatory act occurring before March 16, 2013, is time-barred. Winston therefore may only pursue claims arising out of her employment at the Altona branch or that occurred during the last month she worked at the Havensight branch before she transferred on April 22, 2013.

Two instances at the Havensight branch form the basis of Winston's claims: continued conflict with Callwood and unwanted sexual advances from a co-worker, Belinda Fontaine. The undisputed facts do not establish whether these incidents occurred before March 16, 2013, and are thus time-barred. Even if the Court were to find these allegations are not time-barred, the claim relating to Fontaine is procedurally barred because the claim has not been exhausted.[4] "The relevant test in determining whether appellant was required to exhaust her administrative remedies . . . is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996) (quoting *Waiters v. Parsons*, 729 F.2d 233 (3d Cir. 1984)). Thus, "the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Webb v. Philadelphia*, 562 F.3d 256, 263 (3d Cir. 2009) (quoting *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976)).

At her February 29, 2016, deposition, Winston asserted for the first time that while working at the Havensight branch, Fontaine, a Bank teller, made unwelcome sexual advances and generally created a hostile environment for Winston. Although Winston's EEOC charge contained allegations that she had been subject to unwanted advances, those allegations stemmed from her employment at a separate branch—the Altona branch—from a different woman, and

---

[4] The Court will address the merits of the claims related to Callwood below.

from a different time period of her employment with the Bank. Because of the key differences between what Winston actually alleged in her EEOC charge and what she alleged for the first time at a deposition two-and-a-half years later, the Court finds the claims related to Fontaine are outside the scope of the EEOC charge and thus procedurally barred.

Winston's remaining Title VII retaliation claim is analyzed under the three-step burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, Winston must establish a prima facie case of retaliation; second, if she does so, the burden shifts to the bank to advance a legitimate non-discriminatory, non-retaliatory reason for its action; and finally, if the Bank establishes a legitimate reason, the burden shifts back to Winston to prove the non-discriminatory reason is merely pretext for retaliation. *See Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006) (applying *McDonnell Douglas* to a Title VII retaliation claim).

To establish a prima facie case of retaliation under Title VII, Winston must establish (1) she engaged in conduct protected by Title VII; (2) after or contemporaneous with the protect conduct, her employer took an adverse action against her; (3) the adverse action was materially adverse; (4) and there was a causal connection between her participation in the protected activity and the adverse employment action. *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68-69 (2006); *Moore v. City of Philadelphia,* 461 F.3d 331, 340-41 (3d Cir. 2006). To establish causation, "a plaintiff must show a causal connection between the plaintiff's opposition to . . . unlawful discrimination and an action that might have dissuaded a reasonable worker from making . . . a charge of discrimination." *Moore*, 461 F.3d at 341-42. Even when a plaintiff is subject to an adverse employment action, if the reason for that action "is one that is not proscribed by Title VII, it follows that Title VII provides no relief." *Id.* at 342. In other words,

8

the adverse action must be of that sort that "a reasonable jury could link to a retaliatory animus." *Id.*

Oftentimes, to establish causation, courts consider the temporal proximity between the plaintiff's protected action and the adverse action. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." (citing *Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (10th Cir. 1997) (three month period insufficient); *Hughes v. Derwinski,* 967 F.2d 1168, 1174-75 (7th Cir. 1992) (four month period insufficient))).

Winston asserts she has made out a prima facie case of retaliation because she was subject to "rapid dismissal" after complaining about the sexual harassment to her manager, Sharon Kendall, while working at the Altona branch. *See* Opp'n to Mot. 2. Although Winston has provided no evidence that she made such a complaint, at oral argument she contended that she complained sometime in September or October 2013. Even if Winston complained to Kendall, the Court finds she nevertheless fails to establish causation, as her complaint would have occurred *after* she was suspended for excessive tardiness and absenteeism and given a six-month final warning, and three months before she was terminated. Moreover, outside of Winston's allegations to the contrary, the Court finds no basis to conclude that Winston's complaints of sexual harassment caused her termination. The Court, therefore, finds Winston has failed to establish a prima facie case of retaliation.

Even if Winston could make out a prima facie claim of retaliation, the Bank has set forth a non-discriminatory reason for terminating her. The undisputed facts establish that Winston had

a lengthy, continuous, and unimproved record of tardiness and absenteeism prior to being terminated. Indeed, much of Winston's tardiness and absenteeism occurred prior to her employment at the Altona branch. In fact, before working at the Altona branch, the Bank had documented Winston's continued tardiness, beginning in 2011, in multiple annual reviews and through formal written documentation, had placed her on a PIP to improve her tardiness and absenteeism, and had formally disciplined her for excessive tardiness and/or absences. Specifically, Winston's August 15, 2012, PIP stated that the Bank had counseled Winston concerning her "constant tardiness and absences to no avail" and that despite "written documentation . . . there has been no improvement." Statement of Undisputed Facts Supp. Summ. J., Ex. 10. Moreover, on Winston's first day at the Altona branch—presumably *before* Winston was harassed at the Altona branch, much less complained of such harassment—Kendall, Hodge-Ryan, and Francis counseled Winston on the need for her to improve her tardiness and absenteeism issues. Less than two-and-a-half months later, the Bank issued Winston a "Final Warning," noting that since her first day at the Altona branch, she had been absent or tardy twenty times—and that over the previous six months she had been absent or tardy forty-seven times.

On June 20, 2013, the Bank suspended Winston for three days based on her continuous and excessive tardiness and absences and warned her that "any further unexcused absences or tardiness within the next six months" would result in "immediate termination." Statement of Undisputed Facts Supp. Summ. J., Ex. 14. Near the end of this six-month period, Winston requested a severance package from the Bank, which it agreed to. Although Winston initially accepted the package, she subsequently rescinded her acceptance. Following her rescission, and at the conclusion of the six-month period, the Bank terminated Winston.

In addition to the record of written documentation and discipline the Bank imposed, Winston acknowledged to her supervisors on several occasions during her employment that tardiness and being absent presented a persistent issue during her employment. *See id.*, Ex. 11 (expressing "punctuality" is a "challenging task" for Winston and recognizing it is her "responsibility to be at work on time"). Moreover, on February 4, 2013, Winston signed an acknowledgement that she had "been spoken to verbally on more than one occasion in reference to [her] tardiness," that "[m]any meetings were held" with Winston to discuss her need to improve, and that the Bank had "not yet seen any marked improvements." *See* Statement of Undisputed Facts Supp. Summ. J., Ex. 13 (documenting Winston's absences and tardiness over a three month period). The Bank, having terminated Winston because of her excessive and unimproved tardiness over the course of her employment, has established a non-discriminatory reason for the termination.

Once a defendant establishes a non-discriminatory reason for its action, summary judgment is warranted unless the plaintiff is able to "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006). Doing so requires a plaintiff to not just show the defendant was "wrong or mistaken" in terminating her employment, but to also "present evidence contradicting the *core facts* put forward by the employer as the legitimate reason for its actions." *Id.* In other words, a plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the defendant's legitimate non-discriminatory reasons "that a reasonable factfinder could rationally find them 'unworthy of credence,'" and thus infer the

11

legitimate reasons were not the basis for the defendant's actions. *Id.* Winston has failed to offer any evidence beyond conclusory allegations to contradict the Bank's legitimate reason for her termination. The Court finds the Bank's reason for terminating her was not pretextual, and thus, even if Winston is able to establish a prima facie case of retaliation, summary judgment is warranted.

Under Title VII, a plaintiff may also bring a hostile work environment claim for sexual harassment that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Tourtellotte*, 636 F. App'x at 846 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To establish a prima facie case of hostile work environment, a plaintiff must prove (1) she suffered intentional discrimination because of her sex; (2) the discrimination was pervasive or severe;[5] (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) respondeat liability existed. *See Andreoli v. Gates*, 482 F.3d 641, 643 (3d Cir. 2007).

Winston asserts that Francis, a supervisor at the Altona branch, told Winston that her future with the Bank was in her hands and touched Winston on her thigh, lap, and back without Winston's consent and despite Winston's request that Francis not touch her.[6] At her deposition,

---

[5] As another court recently recognized, *Andreoli* uses the terms "pervasive and regular" for the second element of a prima facie case, "[b]ut the Supreme Court's standard is 'severe or pervasive' . . . [,] and the Supreme Court's word controls." *Young v. City of Phila. Police Dep't*, 94 F. Supp. 3d 683, 697 n.3 (E.D. Pa. 2015) (quoting *Jensen v. Potter,* 435 F.3d 444, 449 n. 3 (3d Cir.2006) (citations omitted), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006)).

[6] The Court notes that Winston's Complaint alleges that Browne told her that her future was in her hands, and that Browne touched her inappropriately. However, Winston's deposition testimony states that it was Francis who made the comment and touched her. *See* Statement of Undisputed Facts Supp. Summ. J., Ex. 1, at 57. Although the Court credits Winston's deposition

Winston could not recall how many times Francis's behavior occurred, but stated it happened on at least two occasions. *See* Statement of Undisputed Facts Supp. Summ. J., Ex. 1, at 52-53. Beyond alleging so, Winston has failed to show that any unwanted touching she experienced was a result of her sex. But even if Francis's actions are construed as intentional discrimination because of Winston's sex, the Court finds that Winston's allegations are both unsubstantiated and insufficient to show that any such discrimination was pervasive or severe.

First of all, the Court need not credit Winston's unsubstantiated estimation that she was subject to harassment on more than two occasions, much less throughout her employment with the Bank. *See Dreshman v. Henry Clay Villa*, 733 F. Supp. 2d 597, 613 (W.D. Pa. 2010) ("While Plaintiff testified that he was subject to sexual harassment half the time that he worked, when questioned about this estimate at his deposition, he only identified a number of discrete events or incidents of harassing conduct, thus, the Court will not credit Plaintiff's unsubstantiated estimation."); *Stephenson v. City of Phila*, No. 05-1550, 2006 WL 1804570, at *11 & n.2 (E.D. Pa. June 28, 2006) (declining to "credit [plaintiff's] unsubstantiated allegations that discriminatory treatment occurred 'all the time,'" where plaintiff presented nine specific occurrences of harassment); *see also Bumbarger v. New Enterprise Stone and Lime Co., Inc.*, 170 F. Supp. 3d 801, 830 (W.D. Pa. 2016) (collecting cases in which district courts within the Third Circuit have declined to credit a plaintiff's unsubstantiated estimations of harassment and accordingly granted summary judgment).

Secondly, Winston's claims that she was touched inappropriately by a supervisor, even if substantiated, are insufficient to establish the harassment was severe or pervasive. "Many courts in this circuit and others, faced with *evidence* of conduct more frequent and more offensive than

---

testimony, it notes that regardless of whether the harassing conduct came from Francis or Browne, the analysis and result are the same.

that alleged [here] have granted summary judgment in favor of employer defendants." *Funayama v. Nichia Am. Corp.*, No. 08-5599, 2011 WL 1399844, at *13 (E.D. Pa. Apr. 12, 2011) (emphasis added) (collecting cases); *see id.* (finding instances of company president groping plaintiff "on the sides of her breasts under her armpits," kissing her, asking her on dates, and making sexual advances did not rise to the level of severe or pervasive harassment); *Saidu-Kamara v. Parkway Corp.*, 15 F. Supp. 2d 436, 439 (E.D. Pa. 2001) (finding four instances of harassment over an 18-month period—including "patt[ing] her on the buttocks and breast," and making sexually suggestive comments and propositions—were insufficient to amount to severe or pervasive harassment). Winston's allegations, if true, support the conclusion that Francis's behavior may have been inappropriate, but "at best establish[] sporadic and isolated incidents of harassment." *Larochelle v. Wilmac Corp.*, --- F. Supp. 3d ---, No. 12-5567, 2016 WL 5404474, at *13 (E.D. Pa. Sept. 27, 2016) (finding two specific incidents, including shoulder rubbing and a hug, insufficient to establish severe or pervasive harassment).

Winston also bases her hostile work environment claim on her continued conflict with Callwood at the Havensight branch. In her Complaint, Winston asserts that Callwood would provoke Winston by calling her names and saying derogatory things about her. Winston further alleges that because of the conflict with Callwood, and the Bank's refusal to intervene, she asked to be transfered to the Altona branch. As with her other claims, Winston has failed to substantiate any of her allegations. Even if true, the Court finds these allegations fail for at least the same reasons as her other hostile work environment claims, in that she has failed to show that Callwood's treatment of her was based on her sex or was severe or pervasive.[7] Because Winston

---

[7] The Court notes that Winston's claims relating to Callwood would likely also fail because Winston would unlikely be able to establish vicarious liability, as Callwood and Winston were merely co-workers. *See Mandell v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013)

14

cannot establish a prima facie case of hostile work environment, the Court will grant summary judgment.

Winston also brings a claim for wrongful termination under the Virgin Islands Wrongful Discharge Act. The Act provides that an employee discharged for reasons other than those permitted by § 76(a), "shall be considered to have been wrongfully discharged." V.I Code Ann., tit. 24, § 76(c). The Act, therefore, "establishes a presumption that an employee has been wrongfully discharged if discharged for any reason other than those listed in [§] 76(a)." *Gonzalez v. AMR*, 549 F.3d 219, 222 (3d Cir. 2008). Section 76(a) permits an employer to terminate an employee "whose continuous absences from [her] place of employment affect the interest of his employer." V.I Code Ann., tit. 24, § 76(a). As established above, Winston was terminated for her excessive tardiness and absenteeism. Summary judgement of this claim is therefore warranted.

Winston's intentional infliction of emotional distress claim is likewise meritless. To establish a claim for intentional infliction of emotional distress, a plaintiff must demonstrate that defendant's "extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." *Manns v. Leather Shop Inc.*, 960 F. Supp. 925, 930 (D.V.I. 1997). Because summary judgment of Winston's hostile work environment and retaliation claims—which form the basis of her emotional distress claim—is warranted, the Court finds Winston has not demonstrated the Bank's conduct was extreme or outrageous. *See Coddington v. V.I. Port Auth.*, 911 F. Supp. 907, 916 (D.V.I. 1996) (recognizing that conduct giving rise to Title VII liability does not necessarily support an intentional infliction of emotional distress claim (citing *Stingley*

---

("The basis of an employer's liability for a hostile work environment depends on whether the harasser is the victim's supervisory or coworker."); *see also Vance v. Ball State Univ.*, 133 S.Ct. 2434, 2439 (2013) ("If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions."). The Court need not resolve this issue, however, as it finds Winston cannot show that Callwood's behavior was based on her sex or was severe or pervasive.

*v. State of Ariz.*, 796 F. Supp. 424, 431 (D. Ariz. 1992) (holding that Title VII discrimination occurs at a "much lower" threshold of conduct than intentional infliction of emotional distress))).

Finally, the Court grants summary judgment of Winston's claim for punitive damages, as a claim for punitive damages is not a distinct cause of action. *See McDonald v. Davis*, No. 2004-93, 2009 WL 580456, at *16 (D.V.I. Mar. 5, 2009) (collecting cases).

Because the undisputed facts establish that Winston's claims are foreclosed or meritless, the Court will grant summary judgment. An appropriate Order follows.

BY THE COURT:

   /s/ Juan R. Sánchez   
Juan R. Sánchez, J.